952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
THOMPSON, VENTULETT, STAINBACK & ASSOCIATES, INC., Plaintiff-Appellant,
v.
THE BOB EVANS GROUP, INC., the Dollywood Company, A Joint
Venture of Silver Dollar City, Inc. and Dolly Parton
Productions, Inc., Silver Dollar City, Inc., and Dolly
Parton Productions, Inc., Defendants-Appellees.
 No. 91-5295.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1992.
 
 Before KEITH, DAVID A. NELSON and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff-appellant, Thompson, Ventulett, Stainback & Associates, Inc. ("Thompson"), appeals the district court's judgment against it on its claims against the appellees. As this case arose under the diversity jurisdiction of the court, 28 U.S.C. § 1332, Tennessee law is applicable. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938). For the following reasons, we affirm.
 
 I.
 
 2
 In early 1988, Robert Charnock consulted with the Dollywood Company ("Company")[1] concerning the construction of a hotel adjoining the Dollywood Theme Park in Sevier County, Tennessee. Charnock also met with developer Bob Evans ("Evans") to discuss the project. Subsequently, Evans formed the Bob Evans Group, Inc., ("Group") to develop the project.[2]
 
 
 3
 In October, 1988, Charnock discussed with Jere Williams the possibility of Thompson's becoming the architect for the project. In late October or early November, Charnock chose Thompson as the project's architect. On December 16, 1988, Charnock executed a Letter of Agreement ("Agreement") pertaining to the concept phase of the architectural design. Charnock individually signed the Agreement, which set forth the terms pursuant to which Thompson would perform its services.
 
 
 4
 On January 20, 1988, the Group and the Company formulated an unexecuted contract setting forth the duties of the DRH Group, Inc. ("DRH").[3] DRH was not incorporated because project financing was not obtained. After Williams had drafted and sent the Agreement to Charnock, Charnock gave Williams a copy of the DRH Contract and Licensing Agreement.
 
 
 5
 Thompson performed a substantial amount of work during the concept phase, but did not receive the alleged full payment because a fee dispute arose. On October 27, 1989, the instant action was filed requesting payment for architectural services rendered and related expenses. Thompson alleged in its complaint that: (1) Charnock was liable because he signed the contract; (2) the Group was liable because Charnock was its agent; (3) all defendants and Charnock were liable because they participated in a joint venture and/or partnership; and (4) the Company, Silver Dollar, and DPP were liable because they were intended beneficiaries of the Agreement and retained the benefits thereof. Subsequently, both Thompson and the Company filed summary judgment motions which were denied.
 
 
 6
 On September 10-11, 1990, a bench trial was held. Following Thompson's proof, a motion was filed to dismiss the Company and the Group. The motion was taken under advisement. On January 24, 1991, the district court awarded Thompson a judgment of $187,435.22 against Charnock, but ruled in favor of the remaining defendants.[4]
 
 II.
 A. ACTUAL AUTHORITY
 
 7
 When the facts pertaining to the existence or nonexistence of an agency or the nature and extent of an agent's authority are conflicting, or conflicting inferences may be drawn from the evidence, as is the case herein, such issues are factual questions. See Conaway v. New York Life Ins. Co., 102 S.W.2d 66 (Tenn.1937). Therefore, we cannot disturb the district court's decision on these issues unless it was clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). Moreover, an appellant cannot satisfy this standard by merely showing that the evidence is conflicting. Franklin v. Aycock, 795 F.2d 1253, 1257-58 (6th Cir.1986).
 
 
 8
 Thompson argues that the facts of this case indicate that Charnock had actual or express authority to bind the defendants. Actual or express authority is the authority which the principal intentionally bestows upon the agent, or intentionally or by the lack of ordinary care allows the agent to believe himself to possess. Ripani v. Liberty Loan Corp., 95 Cal.App.3d 603, 157 Cal.Rptr. 272 (Cal.Ct.App.1979).
 
 
 9
 Thompson offers scant evidence on the express authority issue. There is no proof of the existence of a contract, oral or written, granting express authority to Charnock. Furthermore, the evidence does not warrant the implication of express authority.
 
 B. APPARENT AUTHORITY
 
 10
 Thompson argues that even if Charnock did not have express authority to bind the Group, he did have apparent authority to contract for them. Apparent authority is: (1) the authority the principal knowingly allows the agent to assume or which he holds the agent out as having; (2) the authority which the agent appears to have because of his express authority; and (3) the authority that a reasonably prudent man would believe the agent to have in light of the principal's conduct. Rich Printing Co. v. Estate of McKellar, 330 S.W.2d 361, 376 (Tenn.1959). Reasonable prudence requires that the party exercise diligence and discretion when considering the agent's authority. Id.
 
 
 11
 The defendants did not hold Charnock out as having any authority to transact business for them. The DRH documents set forth the proposed relationship between the parties. The DRH documents do not establish apparent authority, but indicate the defendants' intent not to be bound by the actions of others.
 
 
 12
 Even assuming that sufficient factors were present to establish apparent authority, Thompson did not act in a reasonably prudent manner. Prior to drafting the Agreement, Thompson made little or no effort to ascertain the parties' relationship. Thompson could have discovered the true relationship between the parties with minimal inquiry prior to drafting the Agreement, and if an agency relationship became evident, Thompson could have protected itself by requiring the appropriate signatures. Therefore, Thompson cannot correct after the fact what it should have done before the fact. Thus, the district court's finding of no express or apparent authority for Charnock on behalf of others was not clearly erroneous.
 
 III.
 
 13
 Thompson asserts that the defendants are liable for the architectural fees because they were engaged in a joint venture or partnership. A joint venture is an association of persons with the contractual intent to conduct a single business venture for joint profit. Robertson v. Lyons, 553 S.W.2d 754, 757 (Tenn.App.1977). A partnership is "an association of two or more persons to carry on as co-owners a business for profit." Bass v. Bass, 814 S.W.2d 38 (Tenn.1991). A partnership's existence is a question of fact if the evidence is conflicting. Wyatt v. Brown, 281 S.W.2d 64 (Tenn.Ct.App.1955). Likewise, a joint venture's existence is a question of fact if the evidence is conflicting. See Charles J. Arndt, Inc. v. City of Birmingham, 547 So.2d 397 (Ala.1989). Thus, the district court's decision will be reviewed pursuant to the clearly erroneous standard. Anderson, 470 U.S. at 573.
 
 
 14
 The record adequately supports the district court's finding. The Group was not engaged in a joint venture or partnership arrangement with Charnock because such a relationship could only come into existence if financing was obtained. Because financing for the project was not obtained, no such relationship arose. The Company, Silver Dollar, and DPP never entered into a joint venture or partnership because such a relationship was contingent on Charnock's presenting a suitable hotel design and building plan. Because the contingent events did not occur, no partnership existed. Moreover, there is no evidence that the parties intended to engage in a joint venture or partnership. In fact, the DRH contracts indicate an intent to the contrary.
 
 IV.
 
 15
 Thompson alleges that the Company, Silver Dollar and DPP are contractually liable as intended beneficiaries. However, the record supports the district court's finding that the proof was insufficient to establish that they were intended beneficiaries. Lastly, Thompson briefly addresses the ratification issue,[5] contending that the defendants ratified the Agreement. Likewise, the record supports the district court's finding on this issue.
 
 
 16
 Because the district court's findings are not clearly erroneous, the judgment is AFFIRMED.
 
 
 
 [1]
 The Company is a joint venture between Silver Dollar City, Inc. ("Silver Dollar") and Dolly Parton Productions, Inc. ("DPP"). Silver Dollar and DPP are appellees herein
 
 
 [2]
 The Company, the Group, Silver Dollar, and DPP will be referred to collectively as the defendants
 
 
 [3]
 The DRH documents state that the Group (Charnock is identified as a shareholder of the Group) and the Company agree to form DRH as a corporation. DRH was to develop, own and manage the Dollywood Hotel. Ownership of DRH was to be as follows: the Group, 90%; the Company, 7.5%; and DPP 2.5%. The documents require the Company to convey, which it has, the proposed hotel's site to DRH upon the satisfaction of all terms of the parties' agreement and upon financing being secured for the project. The Company also agrees to grant DRH a license to use the Dollywood trademark. The license states as follows:
 [DRH] agrees that it is not and will not hold itself out either jointly or individually, as an agent, legal representative, subsidiary, or employee of the [Company] and that each agree, except to the extent provided in any other agreement, they shall have no right or power to, and shall not bind or obligate [the Company] in any way, manner or thing whatsoever, nor shall they represent that they have any right to do so.
 
 
 [4]
 The district court found that Williams received the DRH documents subsequent to sending the Agreement to Charnock for his signature and, therefore, Williams could not have relied on those documents in drafting and executing the Agreement. The court further found that the evidence presented at trial did not establish express or apparent authority. The court noted that: (1) the Agreement was addressed to Charnock only; (2) no other appellee was required to sign the agreement; and (3) Evans was not called as a witness by any party. The court stated that evidence that Evans and some representatives of the Dollywood Companies attended one or more meetings, and that employees of the Dollywood Companies assisted with aesthetic matters, proves only that: (1) the Group was financially interested in the hotel's development; and (2) the Dollywood Companies were being careful about the design because of the use of "Dollywood" trademarks, the association of Dolly Parton's name with the hotel, and the hotel's relationship with the Dollywood Amusement Park
 The court found that the check payment drawn on the account of Robert W. Evans, Trust could have been a loan to Charnock. The court stated that the fact that the Dollywood Companies had final approval authority over all aesthetic aspects of the hotel's development is consistent with the Dollywood Companies' status as owners or persons interested in the trademarks being used in connection with the hotel's development.
 The court further found that a joint venture or partnership did not exist between Charnock and the Group because such a relationship was contingent on financing being secured (which did not occur), and financing could be obtained only after an acceptable design was submitted (which did not occur). Finally, the Dollywood Companies were not engaged in a joint venture or partnership with the other appellees, nor were they intended beneficiaries because their participation was contingent on Charnock's presenting a suitable design and an appropriate plan for constructing the hotel (which Charnock did not do).
 
 
 [5]
 The district court stated in its Memorandum Opinion on the summary judgment motions that Thompson could possibly prove ratification of Charnock's acts by establishing, in conjunction with other appropriate evidence, that the defendants attended meetings with Thompson