IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 9, 2001 Session

# PETER KUDEREWSKI, ET AL. v. ESTATE OF HOOVER HOBBS, ET AL.

**Appeal from the Chancery Court for Sullivan County**
No. 27731-B    Richard E. Ladd, Chancellor, by Interchange

## FILED JULY 30, 2001

### No. E2000-02515-COA-R3-CV

Peter Kuderewski and David Sanchez ("Plaintiffs") sued Hoover Hobbs ("Defendant"), alleging they had an implied partnership during the beginning phases of a now-defunct plan to open a family fun center in Kingsport, Tennessee ("Project"). Plaintiff argues the parties had agreed to use property ("Property") already owned by Defendant for the Project. A portion of the Property was later sold, and Plaintiffs sought to recover 50% of the sale price pursuant to their claimed respective partnership interests. Alternatively, Plaintiffs claim they were entitled to recover, under a theory of unjust enrichment money spent toward improving Defendant's Property in anticipation of the Project. After a bench trial, the Trial Court denied both of Plaintiffs' claims. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J. and CHARLES D. SUSANO, JR., J., joined.

Kenneth R. Worley, Kingsport, Tennessee, for the Appellants, Peter Kuderewski and David Sanchez.

David S. Haynes, Bristol, Tennessee, for the Appellees, Estate of Hoover Hobbs, and its co-administrators, Sandra Hobbs Mann and Lisa Montgomery.

**OPINION**

**Background**

In 1994, Plaintiff Kuderewski and Defendant discussed building a family fun center composed of activities like putt-putt golf, go-cart race track, arcade games, and a deli on the Property. It is disputed whose idea the Project was originally. The family fun center was to be located on Defendant's Property in Kingsport, Tennessee, which Defendant purchased for $250,000 in 1993. The Property contained two structures, including an old Elk's building ("Elk's Building"), and approximately 8.5 acres.[1] Thereafter, Kuderewski contacted his nephew, Sanchez, who was in the vending machine business in New York, and asked him to participate in and contribute money toward the Project.

The exact chronology of events is somewhat unclear from the record. During August 1994, according to Plaintiffs, the parties agreed to make the following contributions: Defendant would contribute the Property; Plaintiff Kuderewski, already the owner of another restaurant business, would contribute his labor and expertise; and Plaintiff Sanchez would make a cash contribution in the amount of $250,000.

Plaintiffs contend the parties agreed to form a partnership in which Defendant would have a 50% interest and each Plaintiff would have a 25% interest. Around this time, Defendant's then-fiance, Gwen Hobbs, who did bookkeeping for the Project, prepared a document entitled "LIMITED PARTNERSHIP" ("Limited Partnership Document") which is consistent with Plaintiffs' contention regarding each party's relative partnership interest. The Limited Partnership Document, however, is neither dated nor signed by any of the parties. Moreover, the Property remained in Defendant's name throughout the parties' dealings.

On August 24, 1994, the parties, with the assistance of an attorney, amended the corporate charter of one of Plaintiff Kuderewski's existing corporations to rename it Fasination Station, Inc.[2] The parties however, did not follow any corporate formalities such as issuing stock or naming a board of directors. Defendant filed an Application for Employer Identification Number, a Form SS-4, for Fasination Station, Inc., in which he listed himself as the "principal officer, general partner, grantor, owner or trustor" and indicated that the business was a corporation. Thereafter, the parties opened a checking account with a local bank for Fasination Station, Inc.

It appears from the record that during August and September 1994, the parties traveled to Florida to visit other family fun centers, attended a games convention in Las Vegas, and

[1] Before this matter went to trial, Hobbs died, and this action was revived by Plaintiffs against the estate of Hoover Hobbs and its co-administrators, Sandra Hobbs Mann and Lisa Montgomery. For simplicity's sake, we refer to Hoover Hobbs as the Defendant.

[2] Although Plaintiff Kuderewski testified that two of his corporate charters were amended to reflect name changes for the Project, the record contains only one Articles of Amendment to Charter of Incorporation for one of Plaintiff Kuderewski's existing corporations which covers Fasination Station, Inc.

attended auctions in Tennessee and Texas where they purchased game and restaurant equipment.[3] The record shows that this equipment was purchased using Sanchez's cash and checks drawn on the account of Fasination Station, Inc., and another account belonging to another business owned by Defendant. Kuderewski testified that the parties had purchased approximately seven tractor-trailer loads of equipment for the Project. The parties also began making improvements to the Property using Sanchez's money. Plaintiffs claim that Sanchez contributed $220,000 toward the Project, a portion of which was cash or cashier's checks.

At Plaintiff Kuderewski's insistence, the parties obtained the services of an architect to determine the estimated cost of improving the Property for the Project. Kuderewski testified at trial that he learned from his past restaurant business experience to obtain a forecast of cost before entering into a project. The proof in the record shows that Defendant estimated that the Project would cost approximately $370,000. The architect's report received by the parties in December 1994, however, put the cost at no less than $1.2 million. The parties stopped the Project due to this unexpectedly high cost estimate.

In late December 1994, Defendant presented a document entitled "Agreement" to Plaintiff Kuderewski in which Defendant referred to the Property as his but also acknowledged the debt owed to Sanchez for improvements made to his Property. Defendant did not, however, acknowledge the existence of a partnership or that he owed any money to Plaintiff Sanchez for the purchase of equipment. The Agreement states that it was the intent of the parties "to incorporate a family fun center known as Fasination Station, Inc. . . . ," on Defendant's Property. Defendant and Plaintiff Kuderewski signed the Agreement, but Plaintiff Sanchez did not.

After the parties abandoned the Project, Plaintiff Sanchez recovered $7,500 from the Project's assets and $19,000 from the sale of equipment. At trial, Plaintiff Kuderewski testified he was unable to sell all of the equipment that was purchased for the Project and has had to store it since the parties abandoned the Project in late 1994.

One of the co-administrators of Defendant's estate, Sandra Hobbs Mann, sold the Elk's Building to a third party, Williams Electric, in late 1997 for $250,000. Mann testified at trial that Williams Electric gutted and completely remodeled the Elk's Building. In November 1998, Defendant died.[4]

Plaintiffs claim that pursuant to the purported partnership agreement, they each are entitled to receive 25%, or 50% total, of the proceeds from the sale of the Elk's Building and the remaining partnership property. Plaintiffs alternatively contend that they are entitled to recovery under the theory of unjust enrichment for the amount of improvements they made to the Property.

---

[3] According to Plaintiff Sanchez's trial testimony, Defendant arrived in Las Vegas with his then-fiancé, Gwen Hobbs, but immediately got on another plane to leave Las Vegas due to an argument he had with Gwen Hobbs.

[4] It is unclear from the record on appeal how Sandra Hobbs Mann obtained from Defendant prior to his death in 1998 the power to sell the Property.

Defendant filed a Counterclaim for damages resulting from Plaintiffs' failure to promptly remove the equipment from Defendant's Property and from another building that Defendant owned.

After a bench trial, the Trial Court held that the parties did not have a partnership, either express or implied, and that even if a partnership existed, the partnership did not have any assets. The Trial Court, when rendering its opinion from the bench, instead held that the parties were "going to have a corporation . . . ." With respect to Plaintiffs' unjust enrichment claim, the Trial Court held that although there was unjust enrichment to Defendant, there was no proof of any enhancement of the value of the Property or any other proof of damages. The Trial Court awarded nominal damages in the amount of $1 for Plaintiffs' unjust enrichment claim. The Trial Court also held that the remaining equipment belonged to Plaintiff Sanchez. Defendant's Counterclaim was dismissed by the Trial Court. Plaintiffs appeal. We affirm.

## Discussion

Plaintiffs address the following issues on appeal: 1) the Trial Court erred in determining that there was no partnership between the parties because the proof shows that the parties' actions support a finding that a partnership existed; and 2) the Trial Court erred in denying Plaintiffs' claim for unjust enrichment since the Elk's Building was sold in 1997 for the same price that Defendant paid for the entire Property in 1993. Defendant raises no issues on appeal.

"[W]hat will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is one of fact." *Wyatt v. Brown*, 281 S.W.2d 64, 68 (Tenn. Ct. App. 1955); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W. 3d 588, 605 (Tenn. Ct. App. 2001). Accordingly, since we are asked by Plaintiffs to review the Trial Court's determination that there was no partnership between the parties, our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

The Uniform Partnership Act defines a partnership as "an association of two (2) or more persons to carry on as coowners a business for profit . . . ." Tenn. Code Ann. § 61-1-105(a). A partnership agreement does not have to be written but can be implied. *In re Taylor & Assoc., L.P.*, 249 B.R. 474, 479 (E.D. Tenn. 1998). General principles of contract law apply to partnership agreements since to be "'an enforceable contract [,] it must, among other elements, result from *a meeting of the minds in mutual assent to terms*, must be based upon sufficient consideration, and must be sufficiently definite.'" *Id.* (quoting *Wheeler v. Haley*, No. 91-267-I, 1993 WL 398489, at * 5 (Tenn. Ct. App. Oct. 1, 1993)) (alterations in original). When a partnership agreement is not written, the proponent of the partnership must prove the existence of the partnership by clear and convincing evidence. *Id.*; *see also Wheeler v. Haley*, 1993 WL 398489, at * 4 (holding that "'the [triers] of fact are required to carefully scrutinize and weigh the evidence, and should be satisfied of its existence by clear and convincing proof'") (quoting *Johnson v. Graves*, 15 Tenn.App. 466, 481 (1933)).

-4-

When ascertaining whether a partnership existed, courts must determine the intention of the parties "and the controlling intention in this regard is that ascertainable from the acts of the parties." *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). Our Supreme Court has provided the following explanation regarding formation of a partnership:

> In determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties.
>
> * * * * * *
>
> [I]t is not essential that the parties actually intend to become partners . . . . The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts . . . . It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship . . . . Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Id.* (citations omitted).

Plaintiffs contend there was a partnership. Defendant contends there was only an agreement to investigate the feasability of the Project, and to proceed as a corporation if the Project was feasible. The proof in the record does not preponderate against the Trial Court's determination that no partnership existed. Kuderewski's testimony establishes that whether the Project was actually going to get off of the ground was contingent upon the architect's report. *See Thompson, Ventulett, Stainback & Assoc., Inc. v. The Bob Evans Group, Inc.*, 952 F.2d 403, 1992 WL 1680, at * 2-3 (6th Cir. Jan. 7, 1992) (per curiam) (finding that under Tennessee law, the parties did not have a partnership or a joint venture since the project at issue was contingent upon financing despite plaintiff having performed a substantial amount of work toward the project). We find no error with the Trial Court's determination that the parties had no partnership but, instead, intended to operate, if at all, as a corporation. The proof in the record shows that the Project was to be operated as a corporation if, and only if, the Project was feasible.

We understand Plaintiff Sanchez's frustration expressed at trial regarding the loss of his money for a project which never came to fruition and for the purchase of equipment that he characterized as "junk." It is true that the parties improved the Property and purchased equipment using funds of Plaintiff Sanchez. This proof, nevertheless, does not satisfy Plaintiffs' burden of showing by clear and convincing evidence that a partnership existed. Instead, the proof in the record is that the parties had a corporate entity ready for use *if* the Project was feasible. In fact, Plaintiff

-5-

Kuderewski testified at trial that he insisted upon obtaining an estimate from an architect because experience taught him first to determine the cost of a project, to look before leaping so to speak. In addition, the parties had opened a checking account in the corporation's name and used the checking account to purchase equipment. It is also noteworthy that Defendent never transferred the Property.

At most, according to the proof in the record, the parties' conduct shows they had a corporation to use for the Project *if* it went forward. We find no error by the Trial Court on this issue. We hold that the evidence in the record on appeal does not preponderate against the Trial Court's determination that Plaintiffs failed to satisfy their burden of showing that the parties had an implied partnership. In fact, we find that the evidence preponderates in favor of the Trial Court's determination.

We next turn to Plaintiffs' claim of unjust enrichment. To establish this quasi-contractual theory in which courts will "impose a contractual obligation where one does not exist . . .," there must be proof of the following:

> (1) there is no contract between the parties or a contract has become unenforceable or invalid; and
> (2) the defendant will be unjustly enriched absent a quasi-contractual obligation.

*Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998). In addition, a plaintiff's recovery for unjust enrichment for improvements the Plaintiff made to another person's land is the "amount by which the improvements enhance the value of the land." *Simpson v. Davis*, No. W1999-00689-COA-R3-CV, 2000 WL 1346609, at * 4 (Tenn. Ct. App. Sept. 15, 2000); *see also Simpson v. Bicentennial Volunteers, Inc.*, No. 01A01-9809-CV-00493, 1999 WL 430497, at * 2 (Tenn. Ct. App. June 29, 1999) (holding that "[t]he amount of recovery [in an unjust enrichment claim] is the value of the benefit conferred, not the cost to the furnisher"). Courts will not award a recovery for unjust enrichment if the plaintiff does not submit proof of the "reasonable value of the goods or services" provided. *See Doe v. HCA Health Serv. of Tennessee, Inc.*, 46 S.W.3d 191, 198 (Tenn. 2001).

Plaintiffs contend that Defendant was unjustly enriched by the improvements made to his Property, improvements funded by Plaintiff Sanchez. Plaintiffs point to the 1997 sale of the Elk's Building by Sandra Mann for the same price that Defendant paid for the entire Property in 1993, $250,000, as proof that the value of the Property increased due to the improvements. We disagree.

The proof in the record shows that any improvements made to the Elk's Building by Plaintiffs did not enhance the value of the building since the purchaser of the Elk's Building, Williams Electric, completely gutted and remodeled the building. As discussed, the measure of damages in this unjust enrichment claim is the amount the Property's value was enhanced by the improvements, not the amount of money that Plaintiff Sanchez spent on the improvements. *See Simpson v. Davis*, 2000 WL 1346609, at * 4. The Trial Court found that Plaintiffs failed to present

sufficient evidence to show any increase in the value of the Property resulting from these improvements. After a complete review of the record, we hold that the evidence does not preponderate against the Trial Court's finding that Plaintiffs failed to prove the improvements enhanced the value of the Property.

## Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellants, Peter Kuderewski and David Sanchez, and their surety.

_____
D. MICHAEL SWINEY, JUDGE