IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 4, 2000 Session

## JIM HOCKADAY v. DENNIS FREELS

**Appeal from the Chancery Court for Morgan County**
**No. 99-17     Frank V. Williams, III, Chancellor**

**FILED NOVEMBER 2, 2000**

**No. E1999-02719-COA-R3-CV**

---

This is an action for conversion of a $10,169.59 check. Responding to the plaintiff's allegations, the defendant claimed he had authority to negotiate the check because he and the plaintiff had orally entered into a partnership or joint venture. Following a bench trial, the court below found that no such relationship existed and that the defendant had wrongfully converted the check. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Thomas M. Leveille, Knoxville, Tennessee, for the appellant, Dennis Freels.

Henry Clay Barry, Lebanon, Tennessee, for the appellee, Jim Hockaday.

### OPINION

I.

The plaintiff, Jim Hockaday, is in the business of manufacturing and selling hydraulic mowers. At all times relevant to the issues in this case, Hockaday was conducting business through his corporation, Rotary Manufacturing of Tennessee.[1] The defendant, Dennis Freels, is in the business of fabricating parts for equipment, and operates under the name of Liberty Machine & Tool.

---

[1] At the time of trial, the corporation's charter had been revoked. Hockaday, as the sole shareholder of the corporation, was substituted in its place as the plaintiff in this suit.

The parties met in May, 1997, through a mutual business acquaintance. They subsequently agreed to build four mowers, but they failed to reduce their understandings to writing. The testimony, especially as it relates to the parties' business relationship, is in sharp conflict. According to Hockaday's testimony, he agreed to pay Freels for a certain number of hours and a certain price per part for each mower. At trial, Hockaday testified that he told Freels that

> if you will build these components for me, and I had a price, man-hours, cost on material, everything, if you can do that, I will come up to your place and be there and supervise because if you try to build it without the full knowledge of what it actually does after it's all put together, there is too much room for error and most likely you would not get it right.

In stark contrast, Freels testified that he and Hockaday did not discuss a certain price per mower or an hourly rate, but rather agreed to equally share any profit remaining after payment of expenses. He testified at trial that the parties were partners, saying that

> [t]he only thing right from the start that was ever agreed on was he told me he had four mowers sold, we build these four mowers and split the profit, that's what he said.

In May, 1997, the parties undertook to build four mowers, and they continued this project until June or July, 1997. The first mower was sold for $10,169.59 and delivered in early June to McNeil Tractor in Mississippi. The parties disagree as to what happened to the $10,169.59 check McNeil Tractor sent to Hockaday. Hockaday testified he received it in the mail and then "threw it" on the seat of his truck on his way to Freels' place of business. He testified that he then forgot about it until, after talking with a representative of McNeil, he learned that Freels had endorsed the check himself and deposited it to Freels' bank account. Hockaday testified that he did not give Freels permission to negotiate the check.

Freels testified he did not take the check from Hockaday's truck. He said that Hockaday gave him the check sometime in July, 1997, and told him to use it to pay a steel supplier. He stated he received no money from the McNeil transaction, and disavowed receiving any profit out of the subject check.

Hockaday filed suit on August 26, 1997, alleging that Freels wrongfully converted the $10,169.57 check. Following a bench trial, the court below agreed, specifically finding that the parties were not partners or engaged in a joint venture.[2]

_____

[2]The trial court made several other findings of fact relating to the ownership of certain personal property. Freels does not argue on appeal that these findings are erroneous. While Hockaday argues in his brief that the trial court was correct as to the personal property, we do not address the personal property as it was not raised by either party on this

(continued...)

-2-

II.

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993). Our *de novo* review is subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991).

III.

The first issue raised on appeal is whether the trial court erred in finding that no partnership or joint venture existed. Freels argues that he and Hockaday were involved either in a partnership or a joint venture and that Freels' negotiation of the check was therefore authorized.

A partnership is defined in T.C.A. § 61-1-105(a) (Supp. 1999) as "an association of two (2) or more persons to carry on as coowners a business for profit…." A partnership can only be created pursuant to a contract of partnership, though such an agreement may be either express or implied. ***Bass v. Bass***, 814 S.W.2d 38, 41 (Tenn. 1991). To determine whether a partnership exists, courts must ascertain the intention of the parties. *Id*. In the absence of a written agreement, the requisite intention is that which is deducible from the parties' conduct. ***Wyatt v. Brown***, 281 S.W.2d 64, 67 (Tenn. Ct. App. 1955). The parties need only intend "to do the things which constitute a partnership." ***Bass***, 814 S.W.2d at 41. A partnership results if the parties "place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them...." *Id*. It is not necessary that the parties intend to actually form a partnership or even know that the legal result of their actions is to create a partnership. *Id*. Accordingly, the terminology used by the parties to describe their business relationship is of little import. *Id*.

The determination of whether a partnership exists must be made "upon consideration of all relevant facts, actions, and conduct of the parties," *id*., and the burden of proof rests on the party seeking to establish the existence of a partnership. ***Mullins v. Evans***, 308 S.W.2d 494, 498 (Tenn. Ct. App. 1957). "Generally, what will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is one of fact." ***Wyatt***, 281 S.W.2d at 68.

A joint venture has been described by the Supreme Court as "something like a partnership, for a more limited period of time, and a more limited purpose." ***Fain v. O'Connell***, 909 S.W.2d 790, 792 (Tenn. 1995). Joint ventures are subject to the rules of law that govern partnerships. ***Federated Stores Realty, Inc. v. Huddleston***, 852 S.W.2d 206, 212 (Tenn. 1992).

Freels argues that the trial court erred in finding that the parties were not partners. More specifically, he asserts that Hockaday's testimony alone establishes that Hockaday and Freels combined their efforts, property, money, skill, and knowledge for the purpose of earning a profit, and that this fact indicates that the parties were partners or, at a minimum, were involved in a joint venture.

The critical question in this litigation is whether the parties intended to share the profits received from the sale of the mowers. On this point, Freels testified that they did so agree. On the other hand, Hockaday testified that they did not agree to share the profits, but rather agreed that Hockaday would pay Freels for a certain number of hours and a certain price per part for his work in connection with each mower. Because the evidence on this point so sharply conflicts, the issue narrows to a determination of the credibility of the witnesses. The trial court found the facts as testified to by Hockaday. There is nothing in the record to prompt us to reject this determination. As we have stated many times, a trial court's credibility determinations are entitled to great weight on appeal. *See **Massengale***, 915 S.W.2d at 819; ***Bowman***, 836 S.W.2d at 566.

With respect to Freels' argument that Hockaday's testimony alone establishes that the parties were partners, we disagree. While there is evidence in the record, in the form of Hockaday's testimony, tending to support the notion that the parties combined their efforts in producing and delivering the mowers, there is absolutely nothing in Hockaday's testimony establishing that the parties were to share the profits generated by these sales. We therefore cannot say that the evidence preponderates against the trial court's conclusion that the parties were not partners or joint venturers.

IV.

At oral argument, Freels, through his counsel, acknowledged that if we agreed with the trial court on the issue of whether there was a partnership or joint venture, we would be compelled to affirm the judgment of the trial court. Accordingly, because we agree with the trial court's determination that the parties were not partners or engaged in a joint venture, we will not address Freels' second issue regarding an accounting.

V.

The judgment of the trial court is affirmed. The case is remanded for enforcement of the judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant.

_____
CHARLES D. SUSANO, JR., JUDGE