IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 28, 2001 Session

## TIM WALTON v. SHARON (WALTON) CAMP

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 128214-6    The Honorable George H. Brown, Jr., Judge**

**No. W2001-01409-COA-R3-CV - Filed March 19, 2002**

This is an appeal of an order modifying child support.  Mother filed a petition seeking, ***inter alia***, an increase in child support based upon income from father's home appraisal business, which he receives in addition to his regular salary from his full-time employment.  Mother alleged that father entered into a partnership with his new wife in order to shelter income.  The trial court found that, by the time mother filed her petition for an increase in support, a legitimate partnership existed between father and his new wife.  The court ordered an increase in child support based upon father's projected share in the partnership, but taking into consideration the child of father's new marriage.  Mother has appealed.  We affirm in part and reverse in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part And Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Jeffrey Jones, Memphis, For Appellant, Sharon (Walton)Camp

James Stephen King, Memphis, For Appellee, Tim Walton

**OPINION**

This is an appeal of an order on Appellant's Petition to Increase Child Support, to Acquire Life Insurance, and to Modify Medical Insurance Provisions (the "Petition").  Appellant, Sharon (Walton) Camp ("Ms. Camp"), and Appellee, Tim Walton ("Mr. Walton"), were divorced in 1990.  Ms. Camp has custody of the parties' two minor children and Mr. Walton has paid Ms. Camp child support since the divorce.  Mr. Walton has since remarried.  At the time the trial court heard this

matter, Mr. Walton and his new wife, Susan Walton ("Ms. Walton"), had a one and a half (1 ½) year-old child of their marriage[1].

Mr. Walton is employed full-time as a paramedic with the Shelby County Fire Department. In 1996, however, Mr. Walton started a sole-proprietorship, Allright Real Estate Services ("ARES"), which he operated in addition to his full-time employment. ARES provided home inspection services, and the record indicates that, when Mr. Walton started ARES, he sought to become a Certified Real Estate Appraiser and offer appraisal services, as well. Mr. Walton received his certification as a real estate appraiser in 1997.

For the taxable year 1996, Mr. Walton filed a Schedule C, Profit and Loss from Business, with his federal tax return which showed a net loss of $7,141 for ARES. Similarly, Mr. Walton filed a return in 1997 which showed a net loss of $7,106 for ARES. In 1998 and 1999, Mr. Walton showed ARES with a net profit of $26,186 and $37,647, respectively, on Schedule C. On their 2000 Federal Tax Return, however, the Waltons filed a Form 1065, U.S. Return of Partnership Income. The Form 1065 shows ARES had $70,176 in gross receipts, with deductions, including salary to Ms. Walton, resulting in a net profit of $26,051.

The Waltons testified that they filed their ARES earnings as a partnership at their accountant's suggestion, which the accountant apparently proposed in August of 2000. Mr. Walton, however, testified that Ms. Walton "had a vested interest in the company from the time she left her other career," sometime in 1998. This, Mr. Walton alleges, was the date when the partnership between husband and wife was actually formed. The first document evidencing the partnership was the Waltons' 2000 Federal Income Tax Return, which the couple signed on February 28, 2001.[2]

The record indicates that, at least up to the date of the hearing in this matter, ARES' business was transacted out of a checking account entitled, "Tim Walton d/b/a Allright Real Estate Services." Mr. Walton indicated that, although Ms. Walton "is not listed as the owner" of the ARES account, "she has full access to it." Ms. Walton, among other things, writes the majority of the checks from the business checking account. Rather than transferring money out of the business account into the couple's personal checking account for salaries or draws, Mr. Walton testified that the couple pay most of their personal expenses from the ARESs checking account.

Ms. Walton testified that she "pretty much run[s] the business," and that the only thing she doesn't do "is actual field work on the appraisals." She also testified that, until she began running the business in 1998, ARES was losing money. Along these lines, Richard Douglas, a loan originator with Carty Mortgage Services, testified that Ms. Walton is his contact at ARES, that she

_____

[1]The record does not indicate when Mr. and Ms. Walton were married.

[2]In her brief, Ms. Camp notes that this document was signed 30 days after she filed her Petition to Increase Child Support.

delivers the completed appraisals to his office, and that she "is the person that I interface with on any billing questions." Mr. Douglas testified that Ms. Walton "basically manages the business."

The Divorce Referee's Order filed April 20, 2001 states, in relevant part:

> In light of the proof, the cases cited and the Tennessee Uniform Partnership Act Statutes, it is my opinion that a business partnership existed between the Respondent, Tim Walton, and his present Wife, Susan Walton in the operation of the Allright Real Estate Services from the time the present Mrs. Walton, left her job with Paul Davis Systems and began her work efforts on behalf of her Husband's Real Estate Appraisal business.

> The Partnership Code and especially the **Bass v. Bass** case makes it clear that no "formal" writing or magic event is needed to create a partnership, but actions of the parties are the test of said partnership creation.

> However, no cases were cited regarding the proof in this case, where the parties used total proceeds of Husband's full time job and income of the appraisal service, produced by their joint efforts as "family" income with only an alleged oral agreement between Husband and Wife as to a 51% 49% split of the profits, and no such evidence emerged until the partnership tax return prepared for the year 2000.

> The Petition to Modify however was not even filed until January 29, 2001, by which time the proof has shown that a definite business partnership agreement was fully effective. Therefore the issues for the referee to determine are, has there been a substantial increase in the income of the father that warrants a modification, and if so, what portion of the income from the Allright Real Estate Services is to be used to calculate child support?

> I believe the law to be, that minor children share in increased income of the payor and that based on the proof of the father's income for the year 2000, projected into 2001 from both the Shelby County Fire Department and his projected share of the profit from Allright Real Estate Services. I find that total child support amount should be based on 41% as there is also a 3rd child of the current marriage to enter into the guideline requirement, and set a $1,000.00 per month for the two children of the marriage to the Petitioner.

-3-

Said Order to be retroactive to the date of the filing of the Petition on January 29, 2001.

I also Order the Respondent, Tim Walton, to acquire life insurance with the two minor children of the first marriage as irrevocable beneficiaries of $100,000.00 each child, until child support obligation ends for each one. I also Order that he continue to provide medical insurance coverage on the two children of the former marriage and divide equally any uncovered medical expenses with his former Wife, including reasonable and necessary dental expenses. Also Order that attorney fee [sic] be paid to Mr. Jeffrey Jones in the amount of $1,500.00 and is given 90 days to pay said fee. Otherwise, the parties each will pay their own litigation expenses heretofore incurred in preparation of this Petition.

The Referee's Order was affirmed by the trial court order filed May 3, 2000 the trial court entered an order increasing child support to $1,000.00 per month, retroactive to January 29, 2001, requiring Mr. Walton to carry life insurance on his life for the benefit of the children of his first marriage, requiring Mr. Walton to continue to provide medical insurance benefits to the children, and ordering Mr. Walton to pay Ms. Camp's attorney fees. Ms. Camp appeals this Order, and presents the following issues for review, as stated in her brief:

(1) Whether the trial court or Divorce Referee properly determined the obligor's income subject to child support; (2) Whether the trial court or Divorce Referee erred in reducing the obligor's net self-employment income subject to child support by allowing deductions for payments allegedly made to his current wife; (3) Whether the trial court or Divorce Referee erred in reducing the obligor's net self-employment income subject to child support by allowing unproven business deductions and expenses; (4) Whether the trial court or Divorce Referee erred in its award of attorney fees and expenses in favor of the custodian, and whether the Appellant; should be awarded fees and expenses with this appeal.

Mr. Walton adds the following issue: Whether Appellant failed to properly perfect her appeal of the Divorce Referee's ruling.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

-4-

Although we review the factual findings of the trial court under the "presumption of correctness" standard set out in Tenn. R. App. Rule 13(d), we review the actual modification of child support for abuse of discretion. In a recent opinion, the Middle Section of this Court described this heightened standard of review as follows:

> Setting child support is a discretionary matter. *See State ex rel. Coleman v. Clay*, 805 S.W.2d at 755. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn.R.App.P. 11 application filed). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

In the case of a modification of an existing support order, the governing law is T.C.A. § 36-5-101(a)(1) (2001), which states, in pertinent part:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

The Child Support Guidelines (the "Guidelines") define "significant variance as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1997).

Before we address the substantive issues regarding modification of the parties' existing child support order, we must first address the threshold issue Mr. Walton raises regarding Ms. Camp's failure to perfect her appeal of the Divorce Referee's ruling, which was filed outside of the prescribed period. In support of this position, counsel for Mr. Walton cites the case of *Edmundson*

*v. Pratt*, 945 S.W.2d 754 (Tenn. Ct. App. 1996). *Edmundson* is not on point, however, because it deals with an appeal to this Court under the Tennessee Rules of Appellate Procedure rather than local court rules.

This Court has, however, often said that a trial judge may choose to waive local rules, and this Court may not reverse such a decision "absent the clearest showing of an abuse of discretion and that such waiver was the clear cause of a miscarriage of justice." *Killinger v. Perry*, 620 S.W.2d 525 (Tenn. Ct. App. 1981). *See also Crumbley v. Crumbley*, No. M1998-00158-COA-R3-CV, 1999 WL 1015565 (Tenn. Ct. App. 1999). We find no such showing in this case. This issue is, therefore, without merit.

We next address the issues regarding the propriety of the order modifying Mr. Walton's child support obligation in this case. We believe the Ms. Camp's issues on this subject can be condensed to the single issue of whether the trial court properly determined Mr. Walton's income and correctly applied the Child Support Guidelines in determining Mr. Walton's support obligation.

Ms. Camp asserts that Mr. Walton did not have a partnership with his present wife and that his claim of such is a subterfuge to hide his net income. The Referee and trial court found that Mr. and Ms. Walton had entered into a partnership. We hold that the evidence does not preponderate against the trial court's finding that, at least as of the date Ms. Camp filed her Petition in this matter, a legal, albeit oral, partnership existed between the Waltons.

Under Tennessee law, a partnership is statutorily defined as, "an association of two (2) or more persons to carry on as co-owners a business for profit." T.C.A. § 61-1-105(a). *See also Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). The Tennessee Supreme Court, in *Bass*, explained that:

> no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties. *Roberts v. Lebanon Appliance Service Co.*, 779 S.W.2d 793, 795 (Tenn.1989). If the parties' business brings them within the scope of a joint business undertaking for mutual profit--that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them--the result is a partnership whether or not the parties understood that it would be so. *Pritchett v. Thomas Plater & Co.*, 144 Tenn. 406, 232 S.W. 961, 969-70 (1921).

814 S.W.2d at 41. The *Bass* Court went on to note that the determination of whether a partnership exists "depends upon the intention of the parties," and that in this regard, courts should ascertain the parties' intentions based upon the actions of the parties. *See id.* Although a partnership contract is required to establish the existence of a partnership relationship, such a contract need not be in

writing, and the partners need not even intend to become partners for such a contract to be effective. *See id., Aussenberg v. Kramer*, 944 S.W.2d 367, 371 (Tenn. Ct. App. 1996).

In this case, the Referee and trial court found that a partnership existed between the Waltons primarily on the basis of the testimony of witnesses. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

The record indicates that the Walton's were both active participants in ARES. Mr. Walton testified that, although he performs the assessments, Ms. Walton attends to the administrative needs of the business. Ms. Walton's full-time participation in the business coincides with ARES' first turning a profit in 1998. Mr. Walton also testified that, although the partnership was not "in writing" until the parties' filed their 2000 Federal Income Tax Return, "[w]e actually agreed that [Ms. Walton] had vested interest in the company from the time she left her other career."

Ms. Camp has argued that the Referee and trial court's reliance upon the *Bass* case in determining the existence of a partnership in the case at bar is misplaced. Specifically, Ms. Camp argues that the "underpinning of the holding in *Bass* was that the parties had been on 'equal footing' and the success of the business was due in equal part to the efforts of the implied partner." Ms. Camp explains, no such "equal footing" could have existed here, because the appraisal business would cease to exist if it were not for Mr. Walton's professional appraisal license. We respectfully disagree.

We are unaware of a requirement under Tennessee law that partners must possess identical skills in order to enter into a legal partnership. In fact, the *Bass* Court specifically noted that "the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, *combining their property, labor, skill, experience, or money*." 814 S.W.2d at 43 (emphasis added). The Waltons have done precisely this: combined their skills, labor and experience in order to make ARES a profitable business.

While we hold that the Referee and trial court correctly found that the Waltons were engaged in a partnership at the time Ms. Camp filed her petition, for the reasons below, we cannot say that the determination of child support was proper.

"The two most important variables in the guidelines' formula are the number of children to be supported and the noncustodial parent's net income." *Kirchner v. Pritchett*, No. 01-A-01-9503-JV-00092, 1995 WL 714279 (Tenn. Ct. App. 1995). *See also Turner v. Turner*, 919

S.W.2d 340, 344 (Tenn. Ct. App. 1995). There is no dispute that Ms. Camp and Mr. Walton had two children born of their marriage. However, there is considerable disagreement over Mr. Walton's income subject to child support. In reviewing the Orders in this case, as well as the entire record on appeal, we hold that the Referee and the trial court failed to properly indicate the basis for the modification of Mr. Walton's child support obligation. Nothing in the record indicates how either the Referee or trial court determined the monetary basis for the $1,000.00 in child support. Without a starting figure, we cannot determine if the trial court properly set the amount of support.

The Referee wrote:

> I believe the law to be, that minor children share in increased income of the payor and that based on the proof of the father's income for the year 2000, projected into 2001 from both the Shelby County Fire Department and his projected share of the profit from Allright Real Estate Services. ***I find that total child support amount should be based on 41% as there is also a 3rd child of the current marriage to enter into the guideline requirement, and set a $1,000.00 per month for the two children of the marriage to the Petitioner.*** Said Order to be retroactive to the date of the filing of the Petition on January 29, 2001.

(emphasis added). While we agree that basing the increase in child support upon Mr. Walton's income from his Fire Department job and his share of ARES is appropriate under the Guidelines, neither Order indicates upon what amount of Mr' Walton's income the court's Order is based. Without such a finding, we cannot determine if the trial court properly calculated the amount of child support Mr. Walton must pay.

Additionally, the trial court and Referee did not indicate which of ARES' expenses, if any, should be deducted from Mr. Walton's income. The Guidelines provide that:

> Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment. ***Income from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive***

> *promotional, excessive travel, excessive car expenses or excessive*
> *personal expenses, etc., should not be considered reasonable*
> *expenses*. . . .

Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a) (1997) (emphasis added). Again, without any findings about which expenses the Referee and trial court considered in determining what portion of Mr. Walton's partnership income was subject to child support, we cannot determine if the trial court correctly determined his child support obligation.

Finally, we believe that the trial court and Referee have impermissibly included Mr. Walton's child from his new marriage when arriving at the new child support figure.

> ***Children of the obligor who are not included in a decree of child***
> ***support shall not be considered for the purposes of reducing the***
> ***obligor's net income or in calculating the guideline amount.*** In
> addition, these children should not be considered by the court as a
> reason for deviation unless they meet the requirements of rule 1240-
> 2-4-.04(4).

Tenn. Comp. R. & Regs. 1240-2-4-.03(4) (1997) (emphasis added). Rule 1240-2-4-.0-4(4) provides:

> In instances of extreme economic hardship, such as in cases
> involving extraordinary medical needs not covered by insurance or
> other extraordinary special needs for the child(ren) of the obligor's
> current family, [child(ren) living in the home with the obligor for
> whom the obligor is legally responsible] deviation from the
> guidelines may be considered in order to achieve equity between the
> parties when the court so finds.

In this case, the Referee's Order indicates that Mr. Walton's child support obligation was based upon "41% as there is also a 3rd child of the current marriage to enter into the guideline requirement." As we have noted above, the Guidelines forbid the courts from considering children "not included in a decree of child support" when determining a parent's financial obligation, except for exceptional circumstances. Tenn. Comp. R. & Regs. 1240-2-4-.03(4). Since we find nothing in the record to indicate that Mr. Walton has any other children included in a child support decree or that any exceptional circumstances as set out in Rule 1240-2-4-.04(4) existed, we hold that the Referee and trial court should have based Mr. Walton's child support obligation by determining Mr. Walton's net income, and multiplying that figure by 32%, the Guidelines figure for two children. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(5).

For these reasons, we remand this case to the trial court for a proper determination of Mr. Walton's income subject to child support. The trial court should deduct "reasonable expenses" of

the ARES partnership, pursuant to Rule 1240-2-4-.03(3)(a).  If any reason for deviation from the Guidelines exists in this case, the trial court should specify the reasons for such a deviation.

Finally, we hold that the trial court did not abuse its discretion in awarding Ms. Camp attorney's fees.  We have often held that a trial court is afforded discretion concerning whether to award attorney's fees in a divorce case.  ***See Long v. Long***, 957 S.W.2d 825, 827 (Tenn. App. 1997).  On appeal, an appellate court shall not interfere with the trial court's decision except upon a showing of an abuse of that discretion.  ***Id.***

The order of the trial court setting child support is reversed, and the case is remanded to the trial court for a determination of the proper amount of child support consistent with this Opinion. The present child support award shall remain in effect until the trial court makes its determination. The order of the trial court in all other respects is affirmed.  Costs of appeal are assessed to appellee, Tim Walton.  The parties shall each bear their expense for attorney fees on appeal.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S