# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 8, 2013

## JEAN MEADOWS, ETC. V. TARA HARRISON, ETC., ET. AL.

### Appeal from the Chancery Court for Loudon County
### No. 11131    Hon. Frank V. Williams, III, Chancellor

---

### No. E2012-01067-COA-R3-CV-FILED-JUNE 11, 2013

---

In this case, Partner and Decedent created Double J Company for the purpose of buying and selling real estate.  One month following the creation of Double J Company, Decedent personally purchased the Property, which he thereafter deeded to Double J Company. Following Decedent's death, Partner filed a complaint against Heirs and the estate for partition. Heirs objected, arguing that Partner and Decedent never formed a valid partnership and that the Property was subject to the administration of Decedent's estate.  Following a hearing, the trial court deemed the Property partnership property and ordered the sale of the Property.  Heirs appeal.  We affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellants, Tara Harrison, individually and as Personal Representative of the Estate of Jerome King, and Geoff King.

R. Stephen Merritt and Cynthia C. Blair, Maryville, Tennessee, for the appellee, Jean Meadows, individually and as a General Partner of and on behalf of Double J Company.

# OPINION

## I. BACKGROUND

Jean Meadows ("Partner") and Jerome King ("Decedent") drafted a document entitled "General Agreement" on September 21, 2001, which provided, in pertinent part,

> **WITNESSETH**: That in consideration of the mutual covenants and agreements to be kept and performed on the part of said parties hereto, respectively as herein stated, the said party of the first part does hereby covenant and agree that it shall:
>
> > I. As of this date of this General Agreement Instrument, I agree to form a partnership with the party of the second. This partnership shall be called Double J Co., with the sole purpose to engage in Real Estate business.
> >
> > II. And said party of the second part covenants and agrees []: As of this date, 21 September, 2001[,] I agree to become partners of the first party in said Double J Co.. I agree this company is formed to do Real Estate transactions only.
> >
> > III. Other terms to be observed by and between the parties: It is agreed and understood that neither party has the right or power to obligate his [or her] partner without the agreed con[s]ent in writing. All official documents as well as company checks will require dual signatures. If either party of partnership decides to sell, first option of purchase will be given to the other party of partnership for a period of six (6) years from purchase date. Also, the purchase will not exceed original purchase price.
>
> This agreement shall be binding upon the parties, their successors, assigns and personal representatives. Time is of the essence on all undertakings. This agreement shall be enforced under the laws of the State of _____. This is the entire agreement.

Partner and Decedent each signed the document, which appeared to be a form document obtained from E-Z Legal Forms, Incorporated.

One month later, Decedent obtained two tracts of land ("the Property") from Shirley A. Border and executed a trust deed for the amount of the indebtedness. One year later, Decedent signed a quitclaim deed transferring the property to Double J Company ("the Partnership"). Three and a half years later, on March 5, 2006, Decedent died, leaving his children, Geoff King and Tara Harrison (collectively "Heirs"), as his only surviving heirs.

After learning that foreclosure on the Property was imminent due to the outstanding indebtedness and outstanding fees, Partner paid the remaining balance on the mortgage and fees. The trust deed was released on April 20, 2006. Partner filed a complaint for partition one and a half years later against Heirs and the representative of Decedent's estate. She requested a declaration that the Property belonged to the Partnership. She also sought the sale of the Property, reimbursement for expenses related to the Property, and a corresponding division of the remaining proceeds between her and the parties. Heirs objected, denying that a partnership ever existed and claiming that the Property belonged to the estate.

A hearing was held on the complaint at which several witnesses testified. Partner testified that she and Decedent were merely friends that ate together, spent time together, spoke often, and exchanged gifts for special occasions. She denied ever having a romantic relationship with Decedent. She recalled that Decedent approached her about purchasing property and then selling it for profit. She agreed to his proposal, and he purchased the Property. She stated that she agreed to share the expenses with Decedent but that she "usually ended up paying most" of the expenses. She claimed that starting in 2002, she paid the property taxes. She recalled that before Decedent passed away, she submitted approximately $8,180 to Decedent for expenses related to the Property. She claimed that after Decedent passed away, she submitted approximately $26,985 to fulfill the debt on the property, $1,388 in property taxes, and $8,609 in fees.

Partner conceded that she and Decedent never purchased any additional property for their real estate endeavor in the Partnership and that the Property that was deeded to the Partnership was encumbered by the trust deed. She acknowledged that they originally agreed to form the Partnership for a period of three years but that at her request, Decedent extended the agreement for a period of six years. She agreed that the Partnership never filed a tax return, that she and Decedent never used the bank account they opened for the Partnership, and that company mail was either sent to her office or to Decedent's personal address. She identified the quitclaim deed and acknowledged that she was listed as the party responsible for property taxes on the Property. She identified the current property tax bill that was addressed to "Double J Co., [in care of] Jean Meadows."

Partner testified that after Decedent passed away, she contacted a real estate agent and spoke to the agent about selling the property. She denied signing a contract with the agent

or giving anyone permission to post signs advertising the property for sale. She related that she and Ms. Harrison originally agreed to sell the property together but that she decided not to "fool with it" because Ms. Harrison "wanted more money."

Stephen K. Burrell, the assistant treasurer of the Foothills Owners' Association ("the Association"), testified that the owners of the Property had an obligation to pay dues to the Association for various services. He denied ever personally meeting Decedent but recalled speaking with him on the telephone. He related that he also spoke with Partner, and he confirmed that she had submitted approximately $8,294 to the Association for maintenance fees, late fees, and mowing fees. He claimed that he never received payments from the Partnership but that the checks were always signed by either Decedent or Partner. He stated that he had a lien against the Property for unpaid fees of approximately $2,136.

Ms. Harrison, the executor of the estate, testified that she and Mr. King were Decedent's only children. She claimed that Decedent purchased the Property for her and Mr. King and that Decedent never mentioned the Partnership. She learned about the Partnership after Decedent passed away. She asserted that she spoke to Partner on two occasions after Decedent died. She recalled that Partner asked her to help pay the fees on the property and that Partner informed her that someone was interested in purchasing the property for $30,000. She later learned that Partner's potential buyer was Partner's son-in-law. She stated that she visited the Property and found a sign on the property, advertising the sale of the property and providing Partner's telephone number. She conceded that she also posted a sign on the property, advertising the sale of the property.

Following the presentation of the above evidence, the trial court ruled in favor of Partner and ordered the sale of the property with specific instructions regarding the distribution of the proceeds from the sale. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the trial court erred in finding that Partner and Decedent formed a valid partnership.

B. Whether the trial court erred in finding that the Property belonged to the Partnership.

C. Whether Partner is entitled to attorney fees on appeal.

-4-

## III. STANDARD OF REVIEW

"[W]hether a partnership exists under conflicting evidence is [a question] of fact." *Messer Grieshiem Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605 (Tenn. Ct. App. 2001) (quoting *Wyatt v. Brown*, 281 S.W.2d 64, 68 (Tenn. Ct. App. 1955)). On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

## IV. DISCUSSION

### A.

Heirs concede that Partner and Decedent executed a General Agreement to form the Partnership but assert that without additional evidence, Partner failed to establish the existence of a valid partnership, thereby voiding the quitclaim deed. They note that the Partnership never filed a tax return, realized a profit, or made purchases. Partner responds that the execution of the General Agreement evidenced the intent to establish a partnership. She asserts that because she and Decedent "acted to combine [] money and assets and place them into commerce with the motive to sell the property and share the profits, a partnership was created, whether any profits were actually realized or not."

Tennessee Code Annotated section 61-1-101 defines a partnership as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit[.]" "A partnership can only be created pursuant to a contract of partnership, though such an agreement may be either express or implied." *Messer Grieshiem Indus., Inc.*, 45 S.W.3d at 605 (citing *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)). In implied partnership cases, the party alleging the existence of the partnership "carries the burden of proof of that fact by clear and convincing evidence." *See Montgomery v. Montgomery*, 181 S.W.3d 720, 726 (Tenn. Ct. App. 2005); *Story v. Lanier*, 166 S.W.3d 167, 175 (Tenn. Ct. App. 2004). "To determine whether a partnership exists, courts must ascertain the intention of the parties." *Messer Grieshiem Indus., Inc.*, 45 S.W.3d at 605 (citing *Bass*, 814 S.W.2d at 41). In the absence of a written agreement, the requisite intention is that which is deducible from the parties' actions." *Id.* (citing *Wyatt*, 281 S.W.2d at 67). Thus, a partnership exists when

it appears from the circumstances that the parties combined "their time, labor, skills, and assets in a business enterprise to produce a profit." *Bass*, 814 S.W.2d at 44.

In addition to drafting the General Agreement, Decedent executed a deed in which he purported to relinquish the Property to the Partnership. While there were no profits to share, Partner and Decedent shared the expenses related to the property for several years until Decedent's untimely death. Partner continued to pay these expenses after Decedent's death and ultimately fulfilled the debt on the Property. Given these actions and circumstances, we conclude that Partner and Decedent formed a partnership, an admittedly unsuccessful one.

B.

Heirs contend that Decedent never validly transferred the Property to the Partnership because the transfer was not supported by valid consideration and because Decedent did not have the authority to transfer the Property pursuant to the trust deed. Partner responds that the Property was a partnership asset.

Heirs never raised any issues at trial relating to the consideration of the transfer of the Property. A party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 466-67 (Tenn. Ct. App. 1984)). "The jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted). If Heirs had raised this issue, the trial court could have addressed the issue and provided a record for this court's review. Accordingly, we conclude that this issue is waived.

Relative to Decedent's alleged lack of authority to transfer the Property,[1] Heirs did not cite any legal authority in their brief in support of their position. Failure to cite authority in support of an argument as required by Rule 27(a) of the Tennessee Rules of Civil Procedure constitutes a waiver of the issue. *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 105 (Tenn. Ct. App. 2001) ("Failure to cite relevant authority constitutes a waiver of the issue."). Nevertheless, we will briefly address the issue. "Property transferred to *or* otherwise acquired by a partnership is property of the partnership and not of the partners individually." Tenn. Code Ann. § 61-1-203 (emphasis added). The trust deed provided, in pertinent part,

> In the event the Grantor or his successors shall convey the title to the property
> above conveyed any interest therein *without* written consent of the holder of

---

[1]This argument was vaguely referenced in the answer to the complaint and in Partner's testimony at trial.

the above described note; or should a creditor, receiver, or trustee in bankruptcy obtain any interest in the property; or should any party obtain an interest by attachment or any means other than inheritance or will, the entire principal balance with interest and charges shall become immediately due and payable at the option of the holder. As a condition to such consent, the holder may require satisfactory credit information, may require an increase in interest rates and service charges and may make such other requirements as it deems to the best interest of the holder at the time consent is requested.

(Emphasis added). The record was silent as to whether Decedent obtained consent prior to executing the quitclaim deed, which conveyed any interest he had at the time to the Partnership. However, Partner continued payment on the indebtedness following Decedent's death and eventually secured the release of the trust deed from Ms. Border. Accordingly, we conclude that the trial court did not err in ordering the sale of the Property and the corresponding equitable division between Partner and Decedent's estate.

C.

Partner asserts that she is entitled to reasonable attorney fees that she incurred in the defense of this appeal. Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny Partner's request for attorney fees on appeal.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellants, Tara Harrison, individually and as Personal Representative of the Estate of Jerome King, and Geoff King.

_____
JOHN W. McCLARTY, JUDGE

-7-