IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 19, 2022 Session

## MARLETA COSTNER ET AL. v. MARYVILLE-ALCOA-BLOUNT COUNTY PARKS & RECREATION COMMISSION ET AL.

Appeal from the Circuit Court for Blount County
No. L-19719    David R. Duggan, Judge

———————————————————

No. E2021-00189-COA-R3-CV

———————————————————

In this premises liability action, the plaintiffs sued three local governments and a parks and recreation commission, jointly created by the local governments, to recover for injuries suffered by one of the plaintiffs when she stepped into a hole while attending a concert at a park maintained by the commission. The trial court dismissed the action as to the three local governments, concluding that they were immune under the state's Governmental Tort Liability Act ("GTLA"). Later, the trial court granted the commission's motion for summary judgment, ruling that the commission enjoyed immunity under both the GTLA and the state statutes known as the Recreational Use Statutes. We dismiss the appeal as to the three local governments, concluding we lack subject matter jurisdiction because plaintiffs failed to timely initiate an appeal against them. We affirm the trial court's holding that the commission retained immunity under both the GTLA and the Recreational Use Statutes.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Clifford E. Wilson, Madisonville, Tennessee, for the appellants, Marleta Costner and Robert Costner.

Craig L. Garrett, Maryville, Tennessee, for appellee Blount County, Tennessee; Benjamin K. Lauderback, Knoxville, Tennessee, for appellees City of Maryville and Maryville-Alcoa-Blount County Parks and Recreation Commission; and Shelly L. Wilson and Sarah D. Jarrard, Knoxville, Tennessee, for the appellee City of Alcoa.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts in this case are not in dispute. In September 2016, Marleta Costner and her husband, Robert Costner, attended a concert at Springbrook Park ("the Park"), which is located within and owned by the City of Alcoa, Tennessee ("Alcoa"). While at the Park, Mrs. Costner stepped into a hole covered by grass clippings and broke a bone in her right ankle. Her injury required medical treatment, which interfered with her regular household duties, her job as a special education teacher, and her marital relations.

In September 2017, the Costners sued Alcoa in the Blount County Circuit Court ("the trial court"), averring that Alcoa had a duty to keep the Park safe for concert attendees by either filling any existing holes or marking them so as to prevent potential injury. Their complaint also included a claim for loss of consortium on behalf of Mr. Costner. In its Answer, Alcoa admitted that it owned the Park but denied that it controlled it. Alcoa asserted multiple affirmative defenses, including immunity under the GTLA, comparative fault of the Costners, and third party and/or comparative fault of the Maryville-Alcoa-Blount County Parks and Recreation Commission ("the Commission"). Thereafter, Alcoa moved for summary judgment, arguing that it was not liable for Mrs. Costner's injuries under the GTLA, specifically Tennessee Code Annotated section 29-20-204(a), because the statute requires both ownership and control of the location where the injury occurred for immunity to be removed. Although it owned the Park, Alcoa submitted that there was no dispute that the Park was controlled by the Commission. In February 2018, the Costners filed an Amended Complaint to (1) include Blount County ("the County"), the City of Maryville ("Maryville"), and the Commission as defendants in the action, and (2) allege that all four defendants are "jointly and severally liable" because the Commission is "a joint venture established and controlled" by Alcoa, Maryville, and the County.

On October 16, 2018, the trial court entered an order granting Alcoa's motion for summary judgment, finding that Alcoa was immune from suit under the GTLA because it was undisputed that it does not control the Park. In the same order, the trial court dismissed the Costners' claims against Maryville and the County, finding (1) that under the GTLA, neither entity owned or controlled the area where Mrs. Costner was injured and (2) that the complaint against them had been filed outside the GTLA's twelve-month statute of limitations and that Tennessee Code Annotated section 20-1-119 did not extend the time period for such filing, given that Alcoa named neither Maryville nor the County as a comparative fault defendant in its answer to the complaint. In addition, the trial court granted the Commission's motion for a more definite statement and ordered the Costners to amend their Amended Complaint to state more specifically their claims and allegations against the Commission.[1] In November 2018, the Costners filed a Second Amended

---

[1] The record before us does not include the motions to dismiss respectively filed by Maryville and

- 2 -

Complaint naming the Commission as the only defendant. Discovery followed.

In August 2020, the Commission moved for summary judgment, arguing that it was immune from suit under both the GTLA and the Recreational Use Statutes. As to the former, the Commission asserted that the Costners could not prove that it both owned and controlled the Park, as required under the GTLA, or that it had actual or constructive notice of any hole in the Park prior to or at the time of the concert. With respect to the latter, the Commission contended that Mrs. Costner's attendance to the concert was a recreational activity subject to the Recreational Use Statutes and, furthermore, that the Costners could not prove the gross negligence, willful, or wanton conduct necessary to remove the immunity provided by these Statutes. In their response to the Commission's motion, the Costners argued that "attending a concert at a park" is not a recreational activity under the Recreational Use Statutes and that the Commission's reading of the GTLA would result "in the inability of any injured party from successfully suing for injuries sustained in any of the parks no matter how egregious the circumstances of the case might be." The Commission later supplemented the motion to add undisputed material facts. The Costners responded by asserting that the Commission is a "joint venture" as defined in Tennessee Code Annotated section 12-9-101 et seq., the Interlocal Cooperation Act, and that, therefore, it could not be relieved of "any obligation or responsibility imposed upon it by law." *See* Tenn. Code Ann. § 19-9-104(e)(1). The trial court heard the motion in mid-December 2020.

On January 25, 2021, the trial court filed an order granting the Commission's motion for summary judgment on two independent grounds. First, the trial court ruled that the Commission was immune from suit under the GTLA because the Commission did not own the Park and did not have actual or constructive notice of the hole that caused Mrs. Costner's injuries. Second, the trial court determined that the Commission was immune from suit under the Recreational Use Statutes, finding as a matter of law that attendance at a concert at a park "is a cultural activity and a recreational activity." Further, it found that the Costners did not set forth any facts that could support a finding of gross negligence on the part of the Commission that would operate to remove immunity under the Statutes.

The Costners timely appealed. Their notice of appeal listed only the trial court's January 25, 2021 order as the judgment being appealed. Similarly, the notice listed the Commission as the only appellee and was served only upon the Commission. Plaintiffs' opening brief, however, was served upon counsel for Alcoa, Maryville, Blount County, and the Commission, designating the Commission as "appellee" and the three local governments as "former Defendant[s]" in the brief's certificate of service. Maryville moved this Court to dismiss the appeal after receiving a copy of the Costners' opening brief, arguing that Maryville was not a proper party to the appeal because it had not been

---

the County or the motion for a more definite statement filed by the Commission. However, no party has objected to the characterization of these motions as presented in the trial court order adjudicating them.

served with a timely notice of appeal. By order dated August 10, 2021, this Court deferred resolution of the issue of whether Alcoa, Maryville, and the County are proper parties to the appeal to this panel, ordered the parties to fully brief the issue, and allowed the Costners additional time to submit an amended brief to address this question.

## ISSUES PRESENTED

As we perceive it, the parties raise the following issues for our review:

1.      Whether Alcoa, Maryville, and the County are proper parties to this appeal.

2.      Whether the trial court erred in dismissing the Costners' claims against Alcoa, Maryville, and the County where these local governments are partners in a joint venture.

3.      Whether the trial court erred in applying the GTLA to grant the motions for summary judgment submitted, respectively, by Alcoa and the Commission.

4.      Whether the trial court erred in its application of the Recreational Use Statutes to grant the motions for summary judgment submitted, respectively, by Alcoa and the Commission.

## STANDARD OF REVIEW

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is de novo with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. To prevail on a motion for summary judgment, the movant must either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) demonstrate that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye*, 477 S.W.3d at 264. To survive a properly supported motion for summary judgment, the nonmoving party "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. "[T]he evidence must be viewed in a light most favorable to the claims of the nonmoving party, with all reasonable inferences drawn in favor of those claims." *Rye*, 477 S.W.3d at 286.

This appeal also involves issues of statutory interpretation concerning the GTLA

and the Recreational Use Statutes. The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018); *see also Griffin v. Campbell Clinic, P.A.*, 439 S.W.3d 899, 903 (Tenn. 2014) (noting that the court's goal in statutory construction is to "ascertain and give effect to the legislature's intent" (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004))). We begin by "reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear." *Nationwide*, 578 S.W.3d at 30. If the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning. *Id.* We are compelled to apply the statute's "'plain meaning in its normal and accepted use.'" *Griffin*, 439 S.W.3d at 903 (quoting *Eastman*, 151 S.W.3d at 507). We do not read sections of a statute "in isolation," however. *Id.* (citing *Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 750 (Tenn. 2001)). Rather, we read a statute "as a whole . . . in conjunction with [its] surrounding parts, and view [it] consistently with the legislative purpose." *Id.*

## ANALYSIS

Before addressing the substantive issues raised by the parties, we must first determine whether Alcoa, Maryville, and Blount County are proper parties to this appeal. As stated above, the Costners neither listed these governmental entities as appellees in its notice of appeal nor served them with the notice.

## Proper Parties to this Appeal

The Costners assert that Maryville is a proper party to this appeal. Although the notice of appeal was not served on Maryville, they argue that service on the attorney that represents both Maryville and the Commission should be sufficient notice to Maryville. As to Alcoa and Blount County, the Costners submit that Alcoa, Maryville, and Blount County are all "partners" in a "joint venture" and, therefore, notice to one partner serves as notice to all partners under Tennessee Code Annotated section 61-1-102(f). Last, they note that their opening brief was served on all defendants below. For their part, the two cities and the county respond that none of them was served with the notice of appeal or even listed as appellees in the notice, in contravention of the Tennessee Rules of Appellate Procedure. Moreover, they point out, the only judgment for appeal listed in the notice is the trial court's January 25, 2021 order, which does not apply to any of them. They further argue that the Costners' reliance on section 61-1-102(f) is misplaced because the Commission is not a business for profit subject to the Tennessee Revised Uniform Partnership Act; instead, they submit, the Commission was formed under the Tennessee Interlocal Cooperation Act, Tennessee Code Annotated section 12-9-101 et seq. In addition, Alcoa, Maryville, and Blount County contend that the Costners waived the issue of "joint venture" because it was not raised before the trial court in response to their respective motions to dismiss and for summary judgment.

An appeal as of right to this Court is initiated by "by timely filing a notice of appeal with the clerk of the appellate court as provided in Rule 4 *and* by service of the notice of appeal as provided in Rule 5." Tenn. R. App. P. 3(e) (emphasis added). The notice of appeal "shall designate the judgment from which relief is sought." Tenn. R. App. P. 3(f). It "shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). "'In civil cases, the failure to timely file a notice of appeal deprives the appellate court of jurisdiction to hear the appeal.'" *Briley v. Chapman*, 182 S.W.3d 884, 889 (Tenn. Ct. App. 2005) (quoting *Arfken & Assocs. v. Simpson Bridge Co.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002)). This Court is without authority to suspend the requirements of Rule 4 to extend the time for filing a notice of appeal. Tenn. R. App. P. 2. Consequently, "[i]f the notice of appeal is not timely filed, the appellate court is required to dismiss the appeal." *Arfken*, 85 S.W.3d at 791.

As to service, "[n]ot later than 7 days after filing the notice of appeal, the appellant in a civil action *shall* serve a copy of the notice of appeal on counsel of record for each party or, if a party is not represented by counsel, on the party." Tenn. R. App. P. 5(a) (emphasis added). Our Supreme Court has explained that "[s]ervice on opposing counsel meets the need of procedural fairness by informing adversary counsel that an appeal is intended." *Cobb v. Beier*, 944 S.W.2d 343, 345 (Tenn. 1997). Accordingly, this Court has held that an appellant's failure to comply with Rule 5(a) may deprive this Court of subject matter jurisdiction. *Hicks v. Seitz*, No. E2014-02225-COA-R3-CV, 2015 WL 5602285, at *8 (Tenn. Ct. App. Sept. 23, 2015) ("Because Mr. Seitz failed to comply with the service requirement of Rule 5(a) as to Ms. Seitz, we conclude that this Court lacks subject matter jurisdiction over the controversy involving Ms. Seitz's dismissal from this action."). However, the operation of Rule 5(a) may be suspended for good cause. *Id.* (citing Tenn. R. App. P. 2; *G.F. Plunk Constr. Co., Inc. v. Barrett Props., Inc.*, 640 S.W.2d 215, 217 (Tenn. 1982); *Keith v. Regal Real Estate Co.*, No. E2011-00337-COA-R3-CV, 2011 WL 6009625, at *2 (Tenn. Ct. App. Dec. 2, 2011)).

Here, the notice of appeal filed by the Costners listed only the Commission as appellee; it made no reference to Alcoa, Maryville, or Blount County. Also, the notice of appeal (1) designated only the trial court's January 25, 2021 order as the final judgment being appealed as the Commission was the only defendant subject to that order; and (2) listed the Commission on the certificate of service as the only named appellee. From the notice of appeal's internal consistency, we find it evident that the Costners intended to initiate this appeal only as to the Commission and as to the trial court's order dismissing it from the lawsuit. Moreover, it is undisputed that the Costners did not actually serve Alcoa or Blount County or their respective counsel with a copy of the notice of appeal. Given that the notice does not mention Maryville or list a final judgment to which Maryville is subject, we reject the Costners' theory that serving the notice of appeal on the attorney for the Commission constitutes service on Maryville simply because both entities shared the same attorney before the trial court. Furthermore, we perceive no good cause to suspend the service requirements of Rule 5(a) given that Alcoa, Maryville, and Blount County were

not served with a document in this appeal—the Costners' original opening brief—until July 2021, which was more than five months after the filing of the trial court's order being appealed. Even then, the certificate of service on the brief specifically designated each of the three governmental entities as a "(former Defendant)," in contrast with the Commission's designation as "(Appellee)."

Considering these facts in light of the authorities cited above, we conclude that the Costners failed to initiate an appeal as to Alcoa, Maryville, or Blount County in accordance with the Tennessee Rules of Appellate Procedure. This Court has stated that "in order for an appellant to satisfy the requirements of Rule 3(e) and take an appeal as of right before this Court, the appellant must satisfy the requirements of both (1) filing a timely notice of appeal pursuant to Rule 4 and (2) serving each party or counsel for each party with a copy of the notice of appeal pursuant to Rule 5." *Hicks*, 2015 WL 5602285, at *8. The notice of appeal did not name any of these three governmental entities as appellees and did not list a final order to which any of them is subject. The Costners did not serve a copy of the notice on any of them. To exercise jurisdiction over parties unnamed in and unserved with the notice of appeal would amount to an impermissible extension of the time for filing a notice of appeal. We are therefore deprived of jurisdiction and are required to dismiss the appeal as to Alcoa, Maryville, and Blount County.

The Costners attempt to excuse their failure to include or serve Alcoa, Maryville, and Blount County with their notice of appeal by contending that these entities are "partners" in a "joint venture," namely the Commission, and that, therefore, the notice of appeal served on the Commission operates as notice to all these partners. For the reasons that follow, the Costners' reliance on Tennessee Code Annotated section 61-1-102(f) is misplaced.

Effective January 1, 2002, Tennessee repealed its Uniform Partnership Act of 2014 and enacted the Revised Uniform Partnership Act ("RUPA"), codified at Tennessee Code Annotated section 61-1-101 et seq. *See* 2001 Tenn. Pub. Act. ch. 353. Under RUPA, "Partnership" is defined as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit formed under § 61-1-202, predecessor law, or comparable law of another jurisdiction." Tenn. Code Ann. § 61-1-101(7). As our Supreme Court has explained, "the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991) (footnote omitted). Without offering any argument, the Costners conclusorily propose that the Commission is a partnership bound by RUPA and point to section 61-1-102(f), which states:

> A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, but is not effective as such if the

partner committed or consented to a fraud on the partnership.

Tenn. Code Ann. § 61-1-102(f). This argument lacks merit for multiple reasons. First, a partnership, as defined and governed by RUPA, encompasses "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking *for profit*." *Id.* § 61-1-101(7) (emphasis added). There is no evidence in the record before us showing that the Commission was formed to carry on business or other undertaking for profit.[2] Second, RUPA applies to partnerships created "under § 61-1-202, predecessor law, or comparable law of another jurisdiction." *Id.* § 61-1-101(7). Here, as the Costners concede, the Commission was created pursuant to Tennessee Code Annotated section 12-9-101 et seq., the Tennessee Interlocal Cooperation Act, not section 61-1-202 or a predecessor thereof. Last, by operation of section 61-1-102(f), a partnership is imputed with "[a] partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership." Even assuming *arguendo* that Alcoa, Maryville, and Blount County formed the Commission as partners, the Costners served their notice of appeal on the Commission alone; that is, on the alleged partnership itself, not one of its partners. They ask us to imply the reverse of what the statute provides. Section 61-1-102(f) is simply inapplicable here.[3]

Having found that Alcoa, Maryville, and Blount County are not proper parties to this appeal, we pretermit the issues raised by the Costners as to those entities. We turn now to examine whether the trial court correctly granted summary judgment to the Commission—the only proper party to this appeal—based on the immunity from suit provided under these statutes.

## Parks & Recreation Commission

### Immunity under the GTLA

In Tennessee, except as provided under the GTLA, "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and

---

[2] Although RUPA does not define the term "for profit," in context, we see no reason to deviate from the commonly accepted meaning of the term: "The excess of revenues over expenditures in a business transaction." *Profit*, *Black's Law Dictionary* (11th ed. 2019). In any case, the Costners presented no argument to the contrary.

[3] The Costners also contend on appeal that Alcoa, Maryville, and Blount County should not have been dismissed from the suit because the Commission is a joint venture they created pursuant to section 12-9-103 of the Tennessee Interlocal Cooperation Act. This issue, however, is waived because the Costners did not raise it in response to Alcoa's motion for summary judgment or to Maryville and Blount County's respective motions to dismiss. *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009) (holding that parties that fail to properly raise an issue in the trial court waive their right to argue this issue for the first time on appeal). Unsurprisingly, then, the trial court did not address the issue in its October 2018 Order dismissing Alcoa, Maryville, and Blount County from the action. Even if that order was properly before this Court, which it is not, we would have no trial court ruling on the issue to review.

discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a).  In defining a governmental entity, the GTLA includes

> a nonprofit public benefit corporation or charitable entity, including any entity with tax exempt status under the Internal Revenue Code § 501(c)(3) (26 U.S.C. § 501(c)(3)), that is appointed by statute, ordinance, resolution, contract, or other governmental directive to develop, maintain, manage, and provide services and activities at government owned property that is a public park, including facilities located on park property.

*Id.* § 29-20-102(3)(A).  "When immunity is removed by [the GTLA] any claim for damages must be brought in strict compliance with the terms of this chapter."  *Id.* § 29-20-201(c). Pertinent to the instant case, section 29-20-204 provides:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.
>
> (b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302.

*Id.* § 29-20-204.  "This section codifies the common law duty of care of owners and occupiers of property."  *Benn v. Pub. Bldg. Auth. of Knox Cnty.*, No. E2009-01083-COA-R3-CV, 2010 WL 2593932, at *2 (Tenn. Ct. App. June 28, 2010)  (citing *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002)).  As this Court has noted:

> In premises liability cases against a governmental entity, a plaintiff must prove: (1) the governmental entity owns and controls the location or instrumentality alleged to have caused the injury; (2) a dangerous, defective, or, in the case of sidewalks, unsafe condition caused the injury; (3) the governmental entity had actual or constructive notice of the dangerous condition; and (4) the governmental entity breached its duty to eliminate the condition or its duty to warn of the condition.

*Benn*, 2010 WL 2593932, at *2 (citations omitted).  This Court has repeatedly affirmed that immunity is removed under this section only if the governmental entity being sued both owned and controlled the location or improvement alleged to have caused injury to the plaintiff.  *See, e.g.*, *Turner v. City of Bean Station*, No. E2013-02630-COA-R9-CV, 2014 WL 7414324, at *4 (Tenn. Ct. App. Dec. 30, 2014) (holding that immunity was not removed where the city neither owned nor controlled a softball field where plaintiff was

injured); *Watts v. Morris*, No. W2008-00896-COA-R3-CV, 2009 WL 1228273 at \*5 (Tenn. Ct. App. May 6, 2009) ("For immunity to be removed pursuant to the GTLA, the location that allegedly caused the accident must be owned and controlled by the governmental entity being sued."); *Burgess v. Harley*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996) (stating that the governmental entity "must own and control the location or instrumentality alleged to have caused the injury"). Indeed, unless a plaintiff can establish this essential element—that the governmental entity owned and controlled the subject location or instrumentality, the existence of a dangerous or defective condition "need not be addressed." *Harris v. Williamson Cnty.*, 835 S.W.2d 588, 590 (Tenn. Ct. App. 1992).

The trial court found that the Commission is a governmental entity, and the Costners have not challenged that finding either below or before this Court. The GTLA thus applies. There is no dispute—as the Costners admitted in their response to the Commission's motion for summary judgment—that Alcoa, not the Commission, owns the Park where Mrs. Costner was injured. This material fact, as the trial court stated, "reveals the Plaintiffs can neither prove their case as a matter of law nor remove immunity from the Defendant." We see no reason to belabor the point and discuss the remaining elements of premises liability when one element cannot be established. The trial court's grant of summary judgment to the Commission on the basis of immunity under the GTLA is affirmed.[4]

## Immunity under the Recreational Use Statutes

The trial court also granted summary judgment to the Commission on the basis of immunity under the Recreational Use Statutes, finding that the Commission is "a qualifying entity under those statutes," that attendance at a free concert at a park open for all citizens "is a cultural activity and a recreational activity" as a matter of law, and that the Costners "failed to set forth any facts at this stage to support a finding of gross negligence" against the Commission. Our Supreme Court has explained the relevant inquiry as follows:

> The recreational use defense requires a two-pronged analysis to determine whether the State is entitled to immunity. The inquiries are as follows: (1) whether the activity alleged is a recreational activity as defined by the statute; and if so, (2) whether any of the statutory exceptions or limitations to the immunity defense are applicable. If Tenn. Code Ann. § 70-7-102 is

---

[4] While we are sympathetic to the Costners' argument that the requirements of section 29-20-204 may result "in the inability of any injured party from successfully suing for injuries sustained in any of the parks no matter how egregious the circumstances of the case might be," this Court is not at liberty to ignore the import of the clear and unambiguous words of the statute. *See Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 900 (Tenn. 2007) (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004); *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 911 (Tenn. 2000)). Our task here is "to effectuate the intent of the General Assembly even when the result may appear unfair." *Bush v. State*, 428 S.W.3d 1, 21 (Tenn. 2014) (citing *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 524 (Tenn. 2013)).

applicable and no exceptions apply, the State is immune. If Tenn. Code Ann. § 70-7-102 is applicable but an exception is also applicable, the State may be subject to liability.

*Parent v. State*, 991 S.W.2d 240, 243 (Tenn. 1999). Section 70-7-102 provides, in relevant part:

> The landowner, lessee, occupant, or any person in control of land or premises owes no duty of care to keep such land or premises safe for entry or use by others for such recreational activities as hunting, fishing, trapping, camping, water sports, white water rafting, canoeing, hiking, sightseeing, animal riding, bird watching, dog training, boating, caving, fruit and vegetable picking for the participant's own use, nature and historical studies and research, rock climbing, skeet and trap shooting, sporting clays, shooting sports, and target shooting, including archery and shooting range activities, skiing, off-road vehicle riding, and cutting or removing wood for the participant's own use, nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such purposes, except as provided in § 70-7-104.

Tenn. Code Ann. § 70-7-102(a). The list of recreational activities included in this section is "neither exclusive nor exhaustive," and "activities similar to those explicitly enumerated in § 102 may also fall within the purview of the recreational use statute." *Parent*, 991 S.W.2d at 243. Further, this Court has held that the statute's use of the term "for entry" indicates that the statute applies "the moment a visitor enters the property for a recreational purpose, even if the visitor has not yet begun the recreational activity." *Mathews v. State*, No. W2005-01042-COA-R3-CV, 2005 WL 3479318, at *4 (Tenn. Ct. App. Dec. 19, 2005).

Our first task then is to determine whether Mrs. Costner's attendance to a concert at the Park is a recreational activity as contemplated under the statute. Attending a concert is not a recreational activity enumerated in section 70-7-102, but our inquiry does not end there. We must ascertain whether so doing is an activity comparable to those explicitly included in the statute. *See Parent*, 991 S.W.2d at 243 ("Bicycling is by its very nature a recreational activity and is comparable to the activities enumerated in § 102."). Although the Costners concede in their brief that attending a concert is a recreational activity, they contend it is not a recreational activity similar to those enumerated in the statute. The Commission responds that the Costners admitted in their deposition testimony that they were at the Park for "recreational purposes" and that the specific activity in which Mrs. Costner was engaged at the time of her injury was "walking," a recreational activity similar to hiking, which is listed in the statute.

Our Supreme Court's had provided guidance on what activities are considered

"recreational" under the statute. In *Parent v. State*, a minor was injured while riding a bicycle at a state park. *Parent*, 991 S.W.2d at 241. The pivotal issue resembled the one before us, "whether bicycling is a recreational activity as contemplated by the recreational use statute." *Id.* at 243. The Court first determined that "activities similar to those explicitly enumerated in § 102 may also fall within the purview of the recreational use statute" because the statute uses "the phrase 'such recreational activities as' in a manner that implies that the list is neither exclusive nor exhaustive." *Id.* It then held that the State could assert immunity under the statute, given that "[b]icycling is by its very nature a recreational activity and is comparable to the activities enumerated in § 102." *Id.* Like bicycling, it is plain to us that attending a concert at a park, or elsewhere, is by its very nature a recreational activity.[5] The more challenging question is whether it is an activity comparable to those in the statute. In this regard, several courts in this jurisdiction have been presented with situations where the injured party simultaneously engaged or intended to engage in activities enumerated in the statute as well as in activities not listed. *See, e.g.*, *Mathews v. State*, No. W2005-01042-COA-R3-CV, 2005 WL 3479318, at *4 (Tenn. Ct. App. Dec. 19, 2005) (holding that section 102 barred recovery where plaintiff's purpose in entering the Park was to attend Archeofest, hike, and take a hayride); *Cagle v. United States*, 937 F.2d 1073, 1076 (6th Cir. 1991) (holding that plaintiff, who was injured while playing on a battlefield cannon at national military park, could not recover because he was involved in "sightseeing"); *Waterhouse v. Tenn. Valley Auth.*, 475 F. Supp. 3d 817, 824-25 (E.D. Tenn. 2020), *aff'd*, No. 20-5978, 2021 WL 1230371 (6th Cir. Mar. 17, 2021) (holding that the statute barred recovery by a plaintiff who entered a picnic area "with the intention of picnicking, boating, and fishing" and was injured when she stepped into a hole; and that plaintiff "cannot realistically argue that picnicking—an activity that she actually did engage in—is not an 'activit[y] similar to those explicitly enumerated in [the statute]'"); *Solomon v. United States*, No. 3:12-CV-433-TAV-HBG, 2013 WL 6668737, at *3 (E.D. Tenn. Dec. 18, 2013) (applying the statute where plaintiff stepped into a hole and was injured while touring and hiking to historic sites within a national park).

Considering the foregoing, we have no difficulty holding that attending a concert is both a recreational activity "by its very nature" and one that is comparable to the activities expressly enumerated in section 70-7-102. *Parent*, 991 S.W.2d at 243. Specifically, we find that attending a concert at a park is similar to sightseeing, bird watching, and nature and historical studies and research. *See* Tenn. Code Ann. § 70-7-102(a). The primary purpose and common thread in all these activities is that they are leisure activities. One "cannot realistically argue" that attending a concert at a park, just like picnicking, is not similar to recreational activities enumerated in the statute. *Waterhouse*, 475 F. Supp. 3d at 825. Other jurisdictions have reached similar conclusions. *See Mayor v. Harris*, 809

---

[5] The Merriam-Webster online dictionary defines "recreation" as "refreshment of strength and spirits after work" or as "a means of refreshment or diversion." *Recreation*, Merriam-Webster Online Dictionary, https://www.merriamwebster.com/dictionary/recreation (last visited July 29, 2022). We have little doubt that going to a park to listen to music is a means of refreshment or diversion, and the Costners themselves admitted in their respective depositions that they attended the concert for recreational purposes.

S.E.2d 806, 807–08 (Ga. 2018) (attending a youth football game is a recreational activity for purposes of recreational use statute); *Carlson v. Town of S. Kingstown*, 111 A.3d 819, 824 (R.I. 2015) (attending a little league baseball game is a recreational activity under applicable statue).[6]

The Costners did not designate as an issue or argue in their brief that any of the statutory exceptions to the shield against liability conferred by this part, listed under section 70-7-104, are applicable in this case. We, therefore, may deem this issue waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). However, we elect to address the issue because the Costners alluded to it in their response to the Commission's motion for summary judgment, and the trial court ruled on it in its January 25, 2021 Order. Specifically, the Costners asserted that the Commission's "failure to address this hole [that Mrs. Costner stepped into] for a year is a clear indication that the program to fill holes in the park is a major failure and constitutes gross negligence toward attendees at a concert." The trial court found "no evidence of any element of gross negligence on the part of the [Commission], nor was there any willful or wanton conduct on behalf of the [Commission]." *See* Tenn. Code Ann. § 70-7-104(a)(1) (providing that liability is not limited under the statute for "[g]ross negligence, willful or wanton conduct that results in a failure to guard or warn against a dangerous condition, use, structure or activity").

We agree with the trial court. Our Supreme Court has defined gross negligence as "a conscious neglect of duty or a callous indifference to the consequences." *Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994) (quotation omitted). Gross negligence is generally a question of fact, but it "may be decided as a matter of law when the material facts are not in dispute" and "would permit a reasonable person to reach only one conclusion." *Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352, at *5 (Tenn. Ct. App. Jan. 27, 2004). The trial court found that the Park was mowed at least once per week during the relevant timeframe; that the Commission checks for holes prior to each concert; and that the Commission's employees fill holes when they become aware of them. These findings were undisputed. In addition, there is no evidence in the record that the Commission was aware of the existence of any holes in the Park on the date of the concert, let alone in the area of the Park where the concert was held. To the contrary, as the trial court found, it is undisputed that the Costners offered no proof concerning how long the hole at issue existed before Mrs. Costner stepped into it, what or who caused the hole to exist, or that anyone reported to the Commission the existence of holes in the area where Mrs. Costner was injured. The Commission could not warn Mrs. Costner about a condition of which it did not have actual or constructive notice. In other words, the Costners did not raise material issues of fact suggesting that the

---

[6] The Commission also argues that walking is a recreational activity and that the statute applies because Mrs. Costner was walking at the Park during the concert. Because we hold that attending a concert at the Park is a recreational activity comparable to those enumerated in the statute, we need not address whether the act of walking is covered by the statute.

Commission engaged in grossly negligent, willful, or wanton conduct that resulted in a failure to warn Mrs. Costner of the presence of holes in the area of the Park where she was injured. Consequently, we conclude that as a matter of law, the Costners could not establish gross negligence to negate the immunity provided to the Commission under the Recreational Use Statutes.

## CONCLUSION

This appeal is dismissed as to Blount County, the City of Alcoa, and the City of Maryville. We affirm the judgment of the trial court as to the Maryville-Alcoa-Blount County Parks & Recreation Commission. Costs on appeal are assessed to the appellants, Marleta Costner and Robert Costner, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE